IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LIFESTYLE REAL ESTATE LENDER, LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **FRED RAPPAPORT**, et al., <br><br> Defendants. | CIVIL ACTION <br><br> NO. 21-1781-KSM |

## MEMORANDUM

**Marston, J.**                                                                                                                                                                             **October 8, 2025**

      The United States Constitution protects our most fundamental rights, including the right to a civil trial by jury, but even constitutional rights can be waived if the waiver is knowing and voluntary. Plaintiff Lifestyle Real Estate Lender, LLC ("Lender") argues that's exactly what happened in this case, and it moves to strike the jury demand included in the Answer submitted by Defendant Deborah R. Popky, Executrix of the Estate of George Popky (the "Estate").[1] (Doc. No. 56.) The Estate opposes the motion. (Doc. No. 59.) Because George Popky, M.D., knowingly and voluntarily waived his right to a trial by jury in cases arising out of the parties' Guaranty Agreement, the Court agrees with Lender and strikes the jury demand included in the Estate's Answer.

---

[1] Lender also moves to strike the jury demand included in the Amended Answer (Doc. No. 16) submitted by Defendant Fred Rappaport, Ph.D. (*See* Doc. No. 56.) Dr. Rappaport has not filed an opposition to the motion, so the Court also grants the motion as uncontested as against Dr. Rappaport. *See* L. Civ. R. 7.1(c) ("In the absence of a timely response, [a] motion may be granted as uncontested . . . .").

I.      BACKGROUND

This case involves a decade-long contract dispute between the Lender, Dr. Rappaport, Dr. Popky, and the doctors' various companies. Before turning to the particulars of the contracts at issue, it is helpful to understand Dr. Popky's relationship with Dr. Rappaport and the structure of their joint business ventures.

A.      **Corporate Relationships**

Drs. Rappaport and Popky were business partners. (Doc. No. 61-2 at 2.) Together, they represented the majority ownership interest in Lifestyle Healthcare Group Inc. (the "Corporation"), which was formed in 2012. (*Id.*; *see also* Doc. No. 61-1 at 4.)[2] In addition, Dr. Rappaport was the sole owner of Lifestyle Management Group LLC (the "LLC"). (Doc. No. 61-2 at 2.) The Corporation and the LLC were, in turn, the sole owners of Lifestyle Real Estate I LP (the "Borrower"). (*Id.*)



(*Id.*)

---

[2] Dr. Popky also served as President of the Corporation. (Doc. No. 61-1 at 4.)

B.     **The Loan Transaction**

As relevant here, Borrower intended to purchase an undeveloped parcel of land in Bucks County Pennsylvania and develop it into a medical facility complex. (Doc. No. 62-1 at ¶ 3.) To that end, on March 6, 2015, Borrower borrowed $3.5 million from Lender pursuant to a Loan and Security Agreement (the "Loan Agreement") and Promissory Note (the "Note"). (Doc. No. 60-3 at ¶ 1; Doc. No. 57-4 (the Note).) The loan was secured by an Open-End Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing (the "Mortgage"), which pledged as security the property located at 1 New Road, Township of Bensalem, County of Bucks, Commonwealth of Pennsylvania (the "Property"). (Doc. No. 60-3 at ¶¶ 2–3; Doc. No. 57-5 (the Mortgage).) In addition to the Loan, Note, and Mortgage, the parties also executed a Guaranty, which guaranteed payment of the debt owed under the Note and Mortgage. (Doc. No. 60-3 at ¶ 4; Doc. No. 57-6.) The Guaranty is the focus of this lawsuit.

The Guaranty identifies four guarantors: (1) Dr. Rappaport, as an individual, (2) Dr. Popky, as an individual, (3) the LLC, and (4) the Corporation (collectively, the "Guarantors"). (Doc. No. 57-6 at 12–13.) In other words, the loan from Lender to Borrower was guaranteed by Borrower's entity owners (the LLC and the Corporation) and the individual majority owners of those entities (Drs. Rappaport and Popky). In the Guaranty, Lender states that it is "willing to make the Loan to Borrower only if, among other things," the Guarantors "guarantee[ ] payment to Lender of the Debt," i.e., the $3.5 million principal amount evidenced by the Note and secured by the Mortgage, together with interest. (*Id.* at 2–3.) The Guarantors agreed, stating that they "absolutely, irrevocably and unconditionally guarant[y] to Lender the full, prompt and unconditional payment of the Debt." (*Id.* at 2.) The Guaranty included multiple other provisions, outlining, among other things, the parties' representations and warranties and the

3

rights of successors and assigns.  (*See generally id.*)  However, the final provision is the only one relevant to the parties' current dispute.  That provision, which is titled "Jury Trial Waiver" and appears just before the Guarantors' signature blocks, included the following, capitalized language:

> THE UNDERSIGNED AGREES THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT BY THE UNDERSIGNED OR LENDER ON OR WITH RESPECT TO THIS GUARANTY OR ANY OTHER LOAN DOCUMENT OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO OR THERETO, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY. LENDER AND THE UNDERSIGNED EACH HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING. FURTHER, THE UNDERSIGNED WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT THIS PARAGRAPH IS A SPECIFIC AND MATERIAL ASPECT OF THIS GUARANTY AND THAT LENDER WOULD NOT EXTEND CREDIT TO BORROWER IF THE WAIVERS SET FORTH IN THIS PARAGRAPH WERE NOT A PART OF THIS GUARANTY.

(*Id.* at 10.)

The Guaranty, like the Loan, Note, and Mortgage, was dated March 6, 2015, and during negotiation of these documents Borrower and the Guarantors were represented by the law firm, Klehr Harrison Harvey Branzburg LLP.  (Doc. No. 61-4 at 2–3 (law firm's opinion letter noting that the firm "acted as counsel" for the individuals and their businesses in connection with the Loan Agreement, Promissory Note, *and* the Guaranty).)

### C. Borrower's Default and Lender's Recourse

After the parties executed the various loan documents, Lender loaned the $3.5 million to Borrower. Around a year later, in April 2016, the Borrower defaulted on the Note. (Doc. No. 60-3 at ¶ 8.) On June 9, 2016, the Lender commenced a mortgage foreclosure action against the Borrower. (*Id.* at ¶ 9.) That action resulted in settlement in October 2017, and on January 31, 2018, Lender consented to an *in rem* judgment in mortgage foreclosure in the amount of $4,929,375, which included principal, interest, legal fees, and costs. (*Id.* at ¶ 11; *see also* Doc. No. 1-5.) On February 21, 2018, an *in rem* judgment in mortgage foreclosure was entered against Borrower and in favor of Lender in that amount. (Doc. No. 60-3 at ¶ 13.) One month later, Lender filed a Praecipe for Writ of Execution in mortgage foreclosure as to the Property, and on July 13, 2018, Lender purchased the Property for $1,191.55 at a public sheriff's sale. (*Id.* at ¶¶ 15–17.) On August 6, 2018, the sheriff's deed for the Property was recorded, transferring the Property to Lender. (*Id.* at ¶ 18.)

### D. Procedural History

Lender filed suit on August 31, 2020 against the Corporation, the LLC, and Drs. Rappaport and Popky. *See Lifestyle Real Estate Lender, LLC v. Rappaport, et al.*, No. 20-4259 (E.D. Pa.). That action was dismissed on March 15, 2021 for lack of subject matter jurisdiction, and in particular, lack of diversity jurisdiction. *See id.*, Doc. Nos. 17, 18. One month later, Lender initiated the instant action against only Dr. Rappaport and the Estate,[3] ensuring the Court has jurisdiction. (*See* Doc. No. 1.) Lender claims that under the Guaranty, Dr. Rappaport and the Estate are liable to pay the balance of the roughly $4.9 million judgment entered in the

---

[3] Dr. Popky passed away on December 5, 2020. (Doc. No. 60-3 at ¶ 21.)

mortgage foreclosure action plus interest and fees. (Doc. No. 60-3 at ¶ 24.) To that end, it states claims for breach of contract, breach of the Guaranty, and unjust enrichment. (*Id.* at ¶ 25.)[4]

On June 28, 2021, the Estate filed its Answer, which included a jury trial demand. (Doc. No. 6.) Lender now moves to strike that demand, arguing that under the Guaranty, Dr. Popky waived his right to a jury trial on claims arising out of that agreement. (Doc. No. 56.) The Estate opposes the motion. (Doc. No. 59.)

## II.     DISCUSSION

"The right to a jury trial in a civil case is a fundamental right expressly protected by the Seventh Amendment to the United States Constitution." *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007); *see also* U.S. Const. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."). Federal Rule of Civil Procedure 38 acknowledges this right and outlines the procedure a party must follow to demand that issues be tried by a jury. *See* Fed. R. Civ. P. 38(a), (b). Rule 39, in turn, states that "[w]hen a jury trial has been demanded under Rule 38 . . . trial on all issues so demanded must be by jury unless: (1) the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record; or (2) the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial. Fed. R. Civ.

---

[4] In the Complaint, Lender states these claims are brought under Pennsylvania law. However, in its submissions on summary judgment, Lender characterizes this as a "typographical and/or drafting error," and emphasizes that the Guaranty unequivocally states that New Jersey substantive law governs any disputes arising out of that agreement. (Doc. No. 60-3 at ¶ 25.) For purposes of the current motion, the Court need not decide which State's substantive laws will govern the underlying claims because the right to a jury trial in federal court is always a question of federal law. *In Re City of Phila. Litig.*, 158 F.3d 723, 726 (3d Cir. 1998); *see also First Union Nat'l Bank v. United States*, 164 F. Supp. 2d 660, 662 (E.D. Pa. 2001) ("[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as in other actions.").

P. 39(a). Here, Lender moves under Rule 39(a)(2) to strike the Estate's demand, arguing that Dr. Popky waived his right to a trial when he signed the Guaranty. (Doc. No. 56.)

"[L]ike all constitutional rights," the right to a trial by jury "can be waived by the parties." *First Union Nat'l Bank*, 164 F. Supp. 2d at 663. The waiver can be either express or implied, so long as it is done voluntarily and knowingly. *Id*. Courts do not lightly uphold jury trial waivers, however, and to defeat the presumption against such waivers, the party moving to enforce a waiver must prove it was done both knowingly and voluntarily. *Id.* To determine whether a waiver is "knowing, voluntary, and intelligent," courts consider four factors: (1) whether there was gross disparity in the bargaining power between the parties; (2) whether the parties are sophisticated business entities; (3) whether the parties had an opportunity to negotiate the contract terms; and (4) whether the waiver provision was conspicuous. *Id.*; *see also Cottman Transmission Sys. v. McEneany*, Civil Action No. 05-6768, 2007 WL 119956, at *2 (E.D. Pa. Jan. 4, 2007). Here, the Estate argues that the Court should not uphold the jury waiver in the Guaranty because these factors weigh against enforcement. (Doc. No. 59.)[5] Lender disagrees, arguing that the undisputed evidence shows each factor weighs in favor of waiver. (Doc. No. 56.) The Court agrees with Lender.

***Bargaining Power.*** Under the first factor, the question is not "whether there was 'unequal' bargaining power," between the parties, "but whether there was a 'gross disparity' of bargaining power." *Cottman Transmission Sys.*, 2007 WL 119956, at *2. Lender has shown there was no gross disparity here. Tellingly, none of the parties have suggested that the Guaranty, or any other loan document, was a form contract or presented by Lender as a non-

---

[5] The Estate does not dispute that the waiver provision, on its face, would apply in this litigation if the Court finds that Dr. Popky entered it knowingly and voluntarily.

negotiable, take-it-or-leave-it offer. *Cf. Aamco Transmissions, Inc. v. Marino*, CIV. A. Nos. 88–5522, 88–6197, 1990 WL 10024, at *2 (E.D. Pa. Feb. 7, 1990) (finding the "defendants possessed virtually no bargaining power" where the "franchise agreement was presented to each franchisee/defendant as a non-negotiable 'take-it-or-leave-it' proposition" where the terms were "locked in concrete"). To the contrary, the loan documents, including the Guaranty, reflect a complex financial transaction made up of multiple agreements, reflecting a level of bargaining power by all parties to the transaction.

This conclusion is bolstered by the fact that the LLC and Corporation, along with Drs. Rappaport and Popky, in their individual capacities, were represented by a corporate law firm during the transaction. (*See* Doc. No. 61-4 at 2 ("In connection with the Loan, we have acted as counsel . . . to . . . Fred Rappaport and George Popky (. . . . collectively the 'Individual Guarantor' . . . .); *id.* at 2–3 ("In so acting, we have reviewed originals or copies of the following documents . . . .(9) Guaranty made by Guarantor for the benefit of Lender.")); *see also* Klehr Harrison Harvey Branzburg LLP, klehr.com (last visited Oct. 2, 2025) ("Klehr Harrison Harvey Branzburg LLP is a dynamic law firm known throughout the business, financial and legal communities for our aggressive and creative problem-solving skills."). The presence of sophisticated legal counsel certainly suggests Dr. Popky was not at a substantial disadvantage during contract negotiations. *See Cottman Transmission Sys.*, 2007 WL 119956, at *2 (finding no gross disparity of bargaining power where the plaintiff "had an attorney who reviewed the agreement").

The Estate argues that there was nevertheless a gross disparity in the parties' bargaining power because Lender "loaned sums needed to discharge or release liens on the Property which

was being developed." (Doc. No. 59 at 7.)  In support of this argument, the Estate references Section 8(d) of the Guaranty:

> Borrower is a pre-existing entity actively engaged in the operation of its business and has not been created as a vehicle to obtain the Loan. *The proceeds of the loan will be used by Borrower solely to (a) discharge or release liens upon the real property encumbered by the Mortgage (the "Property")* or for other business purposes directly related to the Property, and (b) pay fees and other amounts related thereto or to the making of the Loan, and the proceeds of the Loan will not be paid over or diverted by Borrower to any member, officer, director or shareholder of Borrower, the Guarantor, any other guarantors of the Loan or any other person.

(Doc. No. 56-2 at 7 (emphasis added).)  The Estate appears to be trying to analogize this case to *First Union National Bank v. United States*, where the court found a substantial disparity in bargaining power between a lender and a borrower because the borrower was in "financial straits at the time the documents were executed." 164 F. Supp. 2d at 665.  But nothing in Section 8(d) suggests that the Property was in fact subject to liens or that Borrower, Dr. Popky, or the other Guarantors were in "financial straits" when the Guaranty was signed.  Instead, that section merely provides that the loan will be used for proper business purposes, which include the discharge of any liens on the Property.

Moreover, even if the Court assumed Dr. Popky was facing financial difficulties in March 2015, there is nothing to suggest that Lender was aware of that fact such that it used his financial situation to pressure him into signing the Guaranty without negotiation.  To the contrary, Lender's decision to require that Dr. Popky individually guarantee repayment of the loan suggests Lender considered Dr. Popky to be financially stable.  (*See* Doc. No. 61 at 6–7 (Lender arguing that had it "known or had reason to know of any such 'financial straits' of the Borrower or Defendants in 2015" Lender would "have, at minimum, reconsidered lending capital to Borrower for purposes of purchasing the Property.").)

Accordingly, the Court finds there was not a "gross disparity in bargaining power" between Lender and Dr. Popky, and the first factor weighs in favor of enforcing the waiver.

***Sophisticated Parties.*** Under the second factor, the Court considers whether the businesses and individuals that signed the Guaranty, including Dr. Popky, were sophisticated parties. For three reasons, the Court finds that they were. First, the Guaranty is a contract between businesses and their owners, not a business and a consumer. *Cf. Sharma v. Santander Bank, N.A.*, Civil Action No. 22-826, 2022 WL 2316545, at *1 (E.D. Pa. June 28, 2022) (finding the individual plaintiffs were not sophisticated parties because they "Plaintiffs contracted, in their individual capacity, with Defendant [a national bank] to rent and/or lease a safety deposit box; this is not a contract between businesses, or a contract involving investors of franchise owners").

Second, although Drs. Rappaport and Popky signed the Guaranty in their individual capacities, they held ownership interests in the LLC and the Corporation, which, in turn, jointly owned Borrower. (Doc. No. 61-2 at 2.) The doctors' ownership interests in the related companies, combined with the multi-level structure of the business entities, reflects a level of sophistication in their business dealings.

Third, in addition to having an ownership stake in the Corporation, Dr. Popky also served as its President, and there is nothing in the record to suggest he did not take that position or his business dealings seriously. *Cf. First Union Nat. Bank*, 164 F. Supp. 2d at 665 (finding the individual defendant was not a sophisticated party even though he served as the corporate president of at least two corporations because he testified "that he executed the signature pages to the [contracts] without seeing or reading the actual documents themselves," actions that are "contrary to what would normally be expected from a sophisticated businessman"). To the

contrary, Dr. Popky was represented by counsel during the transaction, which suggests he understood the transaction's significance and approached it with a level of professionalism one expects from a sophisticated party. *See Cottman Transmission Sys.*, 2007 WL 119956, at *3 (finding individual was a sophisticated party because he "was a builder/contractor who owned his own contracting business and possessed the business sophistication to incorporate a company, Wendyco, Inc., with the help of his attorney" and he "had his attorney review the terms of the license agreement").

Accordingly, the Court finds the second factor also weighs in favor of enforcement.

***Negotiations.*** Under the third factor, the Court considers whether the parties had an opportunity to negotiate the terms of the Guaranty, including the existence of the jury trial waiver. *First Union Nat'l Bank*, 164 F. Supp. 2d at 663. The first two factors (a party's status as a sophisticated business entity and whether there was a gross disparity in bargaining power) can inform whether the parties had an opportunity to negotiate the terms of an agreement. *See Sharma*, 2022 WL 2316545, at *5 (finding it "highly unlikely" that the individual plaintiffs had an opportunity to negotiate the contract terms given their lack of sophistication and the "extreme disparity in bargaining power at the time"). Here, as discussed above, Drs. Rappaport and Popky were sophisticated businessman, who were represented by counsel during the transaction with Lender. Both facts suggest they were able to negotiate the terms of the loan documents, including the jury trial waiver in the Guaranty, and nothing in the record cuts against that finding.

The Estate concedes that "there is some evidence that some terms of the Note and Mortgage were negotiated," but it argues that this evidence is insufficient because it does not show that Dr. Popky "participated in those negotiations or that guarantors had an opportunity to

11

negotiate the terms of the Guaranty." (Doc. No. 59 at 8.) The Court cannot agree. The Loan Agreement, Note, Mortgage, Guaranty, and multiple other documents were all signed on the same day and collectively governed the loan transaction. (*See* Doc. No. 61-4 at 2–3.) Evidence that portions of the transaction were subject to negotiation suggests that the entire transaction was subject to negotiation. At minimum, it shows the facts of this case are far different from those in *Aamco Transmission, Inc. v. Marino*, where the "franchise agreement was presented to each franchisee/defendant as a non-negotiable 'take-it-or-leave-it' proposition" with terms that were "locked in concrete" and "not subject to negotiation." 1990 WL 10024, at *2.

For similar reasons, the Court rejects the Estate's suggestion that Dr. Popky was unable to negotiate the Guaranty because that agreement "purports to waive multiple rights of the guarantors yet includes a provision stating that no action by Lender shall operate as a waiver." (Doc. No. 59 at 9.) According to the Estate, this shows that the "Guaranty is wholly one-sided" and was not open to negotiation. (*Id.*) But again, the Guaranty is one agreement among many contracts that make up the entire loan transaction. (Doc. No. 61-4 at 2–3 (listing documents).) Even if the Guaranty provides more benefit to Lender, it stretches credulity to suggest that Borrower—and by extension, Dr. Popky—was not receiving a benefit given that it was receiving a loan of $3.5 million.

Because the transaction documents, including the Guaranty, were the product of the parties' negotiations, the Court finds the third factor weighs in favor of enforcing the waiver provision.

***Conspicuousness.*** Last, the Court considers whether waiver provision in the Guaranty was conspicuous. Unlike the rest of the Guaranty, the waiver provision is written entirely in capital letters; it follows the underlined heading, "Jury Trial Waiver"; and it appears directly

before the parties' signature lines.  (Doc. No. 56-2 at 10.)  Although the Estate acknowledges these facts and the case law finding them sufficient, it nevertheless argues that the waiver provision is not conspicuous here because it "does not contain any bolding and the 'waiver' sentence appears in the middle of the paragraph."  (Doc. No. 59 at 9.)  The Court is not convinced.  It is enough that the waiver provision is set off by capitalization; nothing requires that it also be bolded.  *See First Union Nat'l Bank*, 164 F. Supp. 2d at 665 (finding waiver provision conspicuous where it was written in capitalized letters).  And although the term "waive" appears in the second sentence of the paragraph, the first sentence states:  "The Undersigned agrees that any suit, action, or proceeding, whether claim or counterclaim, brought by the Undersigned or Lender on or with respect to this Guarany to any other Loan Document or the dealings of the parties with respect hereto or thereto, *shall be tried only by a court and not by a jury.*"  (Doc. No. 56-2 at 10 (capitalization omitted) (emphasis added).)  This paragraph also begins with the underlined title, "Jury Trial Waiver."  (*Id.*)  Lender clearly did not hide the jury trial waiver in the middle of a paragraph so as to obfuscate its presence.

In short, the Court has no trouble finding the waiver provision was conspicuous and that the fourth factor also weighs in favor of enforcement.  *See First Union Nat'l Bank*, 164 F. Supp. 2d at 665 ("[I]n reviewing the jury trial waiver itself, we note that it was written in its entirety in all capital letters under the underlined heading 'Waiver of Jury Trial.'  We therefore find that the waiver provision at issue was conspicuous.").

*   *   *

All four factors weigh in favor of waiver.  Accordingly, the Court will uphold the jury trial waiver contained in the parties' Guaranty and strike the jury trial demand in the Estate's Answer (Doc. No. 6).

## III.     CONCLUSION

The Lender's motion to strike is granted.  An appropriate order follows.