IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LIFESTYLE REAL ESTATE LENDER, LLC**, <br><br>    Plaintiff, <br><br>    *v.* <br><br> **FRED RAPPAPORT**, et al., <br><br>    Defendants. | **CIVIL ACTION** <br><br> **NO. 21-1781-KSM** |

### MEMORANDUM

**Marston, J.**                                                                                          **October 24, 2025**

      Plaintiff Lifestyle Real Estate Lender, LLC ("Lender") brings claims for breach of contract and unjust enrichment against Defendants Dr. Fred Rappaport and Deborah R. Popky, Executrix of the Estate of George Popky (the "Estate"). (Doc. No. 1.) Defendants move for summary judgment on all claims. (Doc. Nos. 57, 58.) For the following reasons the motions are granted in part and denied in part.

**I.      FACTUAL BACKGROUND**

      The material facts in this case are largely undisputed. This is the latest iteration in a decade-long contract dispute between Lender, Dr. Rappaport, Dr. George Popky (deceased), and the doctors' various companies. Before turning to the particulars of the contracts at issue, it is helpful to understand Dr. Popky's relationship with Dr. Rappaport and the structure of their joint business ventures.

      **A.      Corporate Relationships**

      Drs. Rappaport and Popky were business partners. (Doc. No. 61-2 at 2.) Together, they represented the majority ownership interest in Lifestyle Healthcare Group Inc. (the

"Corporation"), which was formed in 2012. (*Id.*; *see also* Doc. No. 61-1 at 4.)[1] In addition, Dr. Rappaport was the sole owner of Lifestyle Management Group LLC (the "LLC"). (Doc. No. 61-2 at 2.) The Corporation and the LLC were, in turn, the sole owners of Lifestyle Real Estate I LP (the "Borrower"). (*Id.*)



(*Id.*)

### B. The Loan Transaction

In 2015, Borrower began taking steps to purchase an undeveloped parcel of land in Bucks County, Pennsylvania and develop it into a medical facility complex. (Doc. No. 62-1 at ¶ 3.) To that end, on March 6, 2015, Borrower received $3.5 million in funding from Lender pursuant to a Loan and Security Agreement (the "Loan Agreement") and Promissory Note (the "Note"). (Doc. No. 60-3 at ¶ 1; Doc. No. 57-4.) The loan was secured by an Open-End Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing (the "Mortgage"), which pledged as security the property located at 1 New Road, Township of Bensalem, County of Bucks,

---

[1] Dr. Popky also served as President of the Corporation. (Doc. No. 61-1 at 4.)

Commonwealth of Pennsylvania (the "Property").  (Doc. No. 60-3 at ¶¶ 2–3; Doc. No. 57-5 (the Mortgage).)  In addition to the Loan, Note, and Mortgage, the parties also executed a Guaranty, which guaranteed payment of the debt owed under the Note, secured by the Mortgage.  (Doc. No. 60-3 at ¶ 4; Doc. No. 57-6 at 3 (defining "Debt" as the "principal sum evidenced by the Note and secured by the Mortgage, together with interest thereon").)  The Guaranty is the focus of this lawsuit.

The Guaranty identifies four guarantors: (1) Dr. Rappaport, as an individual, (2) Dr. Popky, as an individual, (3) the LLC, and (4) the Corporation (collectively, the "Guarantors").  (Doc. No. 57-6 at 12–13.)  In other words, the loan from Lender to Borrower was guaranteed by Borrower's entity owners (the LLC and the Corporation) and the individual owners of those entities (Drs. Rappaport and Popky).  In the Guaranty, Lender states that it is "willing to make the Loan to Borrower only if, among other things," the Guarantors "guarantee[ ] payment to Lender of the Debt," i.e., the $3.5 million principal amount evidenced by the Note and secured by the Mortgage, together with interest.  (*Id.* at 2–3.)  The Guarantors agreed, stating that they "absolutely, irrevocably and unconditionally guarant[ee] to Lender the full, prompt and unconditional payment of the Debt."  (*Id.* at 2.)  The Guaranty included multiple other provisions, outlining, among other things, the parties' representations and warranties and the rights of successors and assigns, as well as a jury trial waiver, which this Court discussed in a previous Memorandum.  (*See generally id.*); *see also Lifestyle Real Estate Lender, LLC v. Rappaport*, No. 21-1781-KSM, 2025 WL 2857496 (E.D. Pa. Oct. 8, 2025).

After the parties finalized the loan documents, Lender transferred the $3.5 million to Borrower.  Around a year later, in April 2016, the Borrower defaulted on the Note.  (Doc. No. 60-3 at ¶ 8.)  That default resulted in a volley of filings in state and federal court.

3

### C. The Mortgage Foreclosure Action

On June 9, 2016, Lender commenced a mortgage foreclosure action against Borrower in the Court of Common Pleas of Bucks County, which was assigned to the Honorable Jeffrey G. Trauger. (*Id.* at ¶ 9.) That action resulted in a settlement, pursuant to which Borrower consented to an *in rem* judgment in mortgage foreclosure in the amount of $4,929,375, which included principal, interest, legal fees, and costs. (*Id.* at ¶ 11; *see also* Doc. No. 1-5.) On February 21, 2018, the *in rem* judgment in mortgage foreclosure was entered against Borrower and in favor of Lender for that amount. (Doc. No. 60-3 at ¶ 13.) One month later, Lender filed a Praecipe for Writ of Execution in mortgage foreclosure as to the Property, and on July 13, 2018, Lender purchased the Property for $1,191.55 at a public sheriff's sale. (*Id.* at ¶¶ 15–17.) On August 6, 2018, the sheriff's deed for the Property was recorded, transferring the Property to Lender. (*Id.* at ¶ 18.) After the sale of the Property, the Pennsylvania foreclosure action went dormant. (*See* Doc. No. 57-8 at 4 (docket for *Lifestyle Real Estate Lender, LLC v. Lifestyle Real Estate I LP*, No. 2016-03634 (Bucks Cnty Ct. Comm. Pl.).)

### D. The Federal Breach of Contract Case

Around two years after the sheriff's sale, on August 31, 2020, Lender filed suit in this Court against all the Guarantors to recover the approximately $4.9 million judgment entered in the mortgage foreclosure action, plus interest. *See Lifestyle Real Estate Lender, LLC v. Rappaport, et al.*, No. 20-4259, Doc. No. 1 (E.D. Pa.). That action was dismissed on March 15, 2021 for lack of subject matter jurisdiction, and in particular, lack of diversity jurisdiction. *See id.*, Doc. Nos. 17, 18.

One month later, Lender initiated the instant action against only Dr. Rappaport and the Estate,[2] dropping the nondiverse parties. (*See* Doc. No. 1.) Once again, Lender claims that under the Guaranty, Dr. Rappaport and the Estate are liable for the roughly $4.9 million judgment entered in the mortgage foreclosure action, plus interest. (Doc. No. 60-3 at ¶ 24.) Because the Guarantors have refused to pay the outstanding balance, Lender brings claims for breach of contract and unjust enrichment. (*Id.* at ¶ 25.)

In December 2021, not long after beginning discovery in this case, Defendants asked the Court to stay this action while Borrower returned to the Court of Common Pleas to litigate the effect of the sheriff's sale before Judge Trauger. The Court granted their request. (*See* Doc. No. 22.)

### E.     The Deficiency Judgment Act Proceedings

That same month, Borrower returned to Judge Trauger and filed a motion to mark the $4.9 million judgment satisfied by the sheriff's sale under Pennsylvania's Deficiency Judgment Act (the "PDJA"). (Doc. No. 57-8 at 4.) The PDJA allows a judgment creditor, like Lender here, to petition the court overseeing a foreclosure action to set the fair market value of foreclosed property when it believes the value of the property itself is not sufficient to cover the outstanding debt:

> Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs, and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court to fix the fair market value of the real property sold.

---

[2] Dr. Popky passed away on December 5, 2020. (Doc. No. 60-3 at ¶ 21.)

5

42 Pa. Stat. & Cons. Stat. § 8103(a). If the court finds that the value of the property is insufficient to cover the debt, the judgment creditor may then attempt to collect the deficiency from liable parties, including guarantors. The PDJA includes an important time limitation, however: the judgment creditor must petition the court within six months of the sheriff's sale. *Id.* § 8103(d). If the judgment creditor fails to do so, then "the debtor, obligor, guarantor or any other person liable directly or indirectly to the judgment creditor for the payment of the debt . . . may file a petition . . . in the court having jurisdiction, setting forth the fact of the sale, and that no petition has been filed within the time limit[ ]" set by the statute. *Id.* § 8103(d). The court, upon receiving such a petition "shall direct the clerk to mark the judgment satisfied, released and discharged." *Id.*

Borrower, relying on § 8103(d), petitioned Judge Trauger to mark the $4.9 million judgment satisfied and released *in rem* as to the property and *in personam* as to the Borrower and Guarantors. (*See* Doc. No. 57-15 (Judge Trauger's August 19, 2022 Order describing the petition); *see also* Doc. No. 60-5 at 4 (Judge Trauger's November 15, 2022 Opinion describing the same).) Lender conceded that it had failed to petition the court to fix the fair market value of the Property within six months of it being sold as required by the PDJA. (Doc. No. 60-5 at 4.) It nevertheless argued that Judge Trauger should not rule on the deficiency liability of Borrower and the Guarantors because per the parties' written agreements, that liability is governed by New Jersey law and the PDJA is inapplicable. (*Id.*) Judge Trauger agreed:

> The [Borrower's] Petition is granted only as to the satisfaction of the *in rem* judgment against the mortgaged premises. The petition is denied in all other respects as to claims related to guarantor liability on the underlying transaction and any alleged deficiency balance due as the parties agreed that the applicable law is New Jersey.

6

(Doc. No. 57-15 at 2; *see generally* Doc. No. 60-5 at 4.)  Judge Trauger specifically found that the case before him was "strictly an *in rem* action and did not involve *in personam* liability," nor was it "subject to the [PDJA] because while [sic] the only connection to Pennsylvania is the pledged vacant collateral commercial Property for the loan."  (Doc. No. 60-5 at 9.)  He went on to conclude that the "remaining questions as to the[ ] contractual liability of the parties and Guarantors" was to be decided by "the Federal Court under New Jersey law."  (*Id.*; *see also id.* at 10 ("New Jersey law, rather than Pennsylvania, applies to determine the parties' contractual obligations under their commercial loan transaction including any deficiency liability due").)

On September 29, 2023, the Pennsylvania Superior Court affirmed Judge Trauger's ruling in a non-precedential opinion.  (*See generally* Doc. No. 60-6 (the appellate court's September 2, 2023 Memorandum).)  Like Judge Trauger, the Superior Court emphasized that "foreclosure issues that do not affect any interest in the actual property are determined by the law governing the underlying debt," which per the parties' loan agreements, was New Jersey.  (*Id.* at 13.)  Borrower petitioned the Pennsylvania Supreme Court for allowance of appeal (Doc. No. 60-8 (Borrower's petition)), but the petition was denied (Doc. No. 60-10 (Pennsylvania Supreme Court's September 4, 2024 Order)).

### F.      Recent Federal Proceedings

With the Pennsylvania Supreme Court's denial, the state court proceedings ended and this action resumed.  On October 17, 2024, nearly three years after entering the stay, this Court entered an Amended Scheduling Order, which set deadlines for discovery and motion practice.  (*See* Doc. No. 49.)  Defendants now move for summary judgment, arguing that Pennsylvania, not New Jersey, substantive law governs this action and that regardless of which law applies,

7

they are entitled to summary judgment on Lender's claims. (*See* Doc. Nos. 57, 58.) Lender opposes the motion. (Doc. No. 60.)

## II. LEGAL STANDARD

Summary judgment is appropriate when the "materials in the record," show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

## III. DISCUSSION

Defendants argue that they are entitled to summary judgment because: (1) "under Pennsylvania or New Jersey law, the amount of the debt was determined by the Bucks County Court of Common Pleas to be $4,929,375, and then satisfied [with purchase of property at sheriff's sale]; therefore, there is no debt remaining to collect or offset;" and (2) "Plaintiff's unjust enrichment claim fails as a matter of law because the doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded upon a written agreement." (Doc. No. 57-1 at 7.) Lender responds that its breach of contract claim survives summary judgment because the law of New Jersey, not Pennsylvania, governs the Guarantors' contractual obligations and under New Jersey law, the debt has not been discharged and there is no fair market value offset when the mortgaged property is purchased for a commercial or business

purpose. (Doc. No. 60 at 11–23.) As for unjust enrichment, Lender argues that it is allowed to plead unjust enrichment as an alternative to a claim for breach of contract. (*Id.* at 23–25.)

### A. Breach of Contract

The Court begins with Lender's claim for breach of contract and determines the applicable law before turning to Defendants' substantive arguments for judgment in their favor.[3]

#### 1. Choice of Law

Defendants argue that Pennsylvania, not New Jersey, law governs Lender's breach of contract claim because that is how Lender pleaded the contract claim in the Complaint. (*See, e.g.*, Doc. No. 57-1 at 9 (arguing that "Plaintiff has asserted claims under Pennsylvania law in this action" and citing portions of the Complaint).) Lender does not dispute the nature of its pleading[4] and instead, argues that any reference to Pennsylvania law in the Complaint was a "typographical error," a fact which Lender's counsel has repeatedly clarified to defense counsel. (Doc. No. 60 at 11–12.)[5] Despite the references to Pennsylvania law in the Complaint, Lender asks the Court to apply the law of New Jersey, consistent with the choice of law provision in the Guaranty and the findings of the Pennsylvania state courts in the related litigation. (Doc. No. 60 at 12.)

---

[3] Lender asserts two contract claims, one labeled breach of contract (Count I) and one labeled breach of guarantor agreement (Count II). (Doc. No. 1 at 5.) Because both claims allege Defendants breached the Guaranty, they are duplicative of each other and the Court considers them together as a single claim for breach of contract.

[4] Lender could not reasonably dispute it, given that the Complaint clearly states the claims are brought "under applicable Pennsylvania common law." (Doc. No. 1 at 6; *see also id.* at 1 ("This is an action for breach of a guaranty agreement to a commercial mortgage agreement by individual guarantors, and for substantial and related claims of unjust enrichment and breach of guarantor agreement *under the state [sic] and common laws of the Commonwealth of Pennsylvania . . . .*").)

[5] Lender also states that if "necessary, [it] will seek leave to amend its Complaint to reflect New Jersey substantive law." (Doc. No. 60 at 13.)

Because this is a diversity case, the Court applies the choice of law rules of the forum state, Pennsylvania. *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011) ("In an action based on diversity of citizenship, a federal court generally applies the choice-of-law rules of the jurisdiction in which it sits."). And "Pennsylvania courts give effect to express choice of law provisions in contracts." *Xerox Corp. v. Bentley*, 920 F. Supp. 2d 578, 579 (E.D. Pa. 2013); *accord Cook v. Gen. Nutrition Corp.*, 749 F. App'x 126, 129 (3d Cir. 2018). Here, the Guaranty contains "a clear choice of law provision," stating that disputes arising out of the Guaranty—like Lender's contract claim—shall be governed by the laws of New Jersey. *Xerox Corp.*, 920 F. Supp. 2d at 579. Defendants have not argued that the Court should disregard this provision because, for example, Pennsylvania has a more "substantial relationship" to the transaction and "there is no reasonable basis for the parties' choice," or because application of New Jersey law would be "contrary to a fundamental policy" of Pennsylvania. *Cook*, 749 F. App'x at 129 ("Pennsylvania courts have adopted section 187 of the Restatement (Second) Conflict of Laws, which honors choice-of-law provisions" unless one of these two exceptions applies).

Instead, Defendants argue that the Court should ignore the clear choice-of-law provision in the Guaranty because the Complaint states Lender's breach of contract claim is being brought under Pennsylvania law. (*See, e.g.*, Doc. No. 57-1 at 9.) But courts are not bound by the choice of law identified by a plaintiff, whether in a complaint or otherwise. *See In re Glasshouse Techs., Inc.*, 604 B.R. 600, 614–17 (Bankr. D. Mass. 2019) (finding New York substantive law applied despite the plaintiffs' contention that Massachusetts law should govern breach of contract claim); *Stuart v. GEICO Gen. Ins. Co.*, No. 1:19-cv-319, 2019 WL 6040069, at *6 (M.D. N.C. Nov. 14, 2019) ("[A]lthough the parties generally treat Plaintiff's claims as arising under North Carolina law, they neither argue that the choice-of-law provision lacks validity nor

10

identify any reason for disregarding North Carolina's typical adherence to choice-of-law provisions. Accordingly, Florida law governs Plaintiff's breach of contract claim."); *cf. In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 272 n.1 (6th Cir. 2019) ("While the complaint did not specify in which state's laws it bases the breach-of-contract claim, the contract's choice-of-law provision makes clear that Ohio law applies."); *TruMulticultural, LLC v. Su Receta, LLC*, No. 3:18-cv-01785-M, 2019 WL 13199705, at *4 (N.D. Tex. May 20, 2019) (conducting choice of law analysis where the Plaintiff did not specify which state's laws apply to its breach of contract claim and the agreements did not contain choice of law provisions).[6]

Defendants have cited no cases to suggest the Court is bound to apply Pennsylvania law to Lender's contract claim.[7] And the Court finds the circumstances do not warrant such a ruling in this case. Notably, the relevant claim—breach of contract—is recognized at common law in both Pennsylvania and New Jersey, meaning Lender is not attempting amend the Complaint out of time to bring an entirely new claim. Nor are Defendants prejudiced by the application of New Jersey law at this late stage of the litigation, given: (1) Lender's repeated representations that New Jersey law applies and that the Complaint's references to Pennsylvania law were "typographical errors," and (2) the state courts' findings that New Jersey, not Pennsylvania, substantive law governs the Guarantors' contractual liability. (*See* Doc. No. 57-15 at 2 (August

---

[6] That said, it is far from best practice to state common law claims are governed by a specific state's laws in the complaint but then pursue those claims under the laws of a different state. And it is certainly odd that—despite Lender realizing its "typographical error" in January 2024 and repeatedly telling the Court and Defendants that it was actually pursuing its claims under New Jersey law—Lender did not seek leave to file an amended complaint until its brief in opposition to summary judgment.

[7] To hold as much would also seem contrary to the Third Circuit's assertion that the "appropriate law must be applied in each case and upon a failure to do so appellate courts should remand the cause to the trial court to afford it opportunity to apply the appropriate law, even if the question was not raised in the court below." *United States v. Certain Parcels of Land in City of Phila.*, 144 F.3d 626, 630 (3d Cir. 1944).

19, 2022 Order by Judge Trauger, which denies the Borrower's petition to mark judgment satisfied "as to claims related to guarantor liability on the underlying transaction and any alleged deficiency balance due as the parties agreed that the applicable law is New Jersey"); Doc. No. 60-5 at 3 (November 15, 2022, Opinion by Judge Trauger stating, "this Court anticipates that the Federal Court will apply New Jersey law as agreed and specified by the parties as New Jersey law, not Pennsylvania law, is governing as to the individual guarantors and their obligation to ensure payment of the commercial sums still owed under the Guaranty Agreement").) *Cf. Huber v. Taylor*, 469 F.3d 67, 75–76 (3d Cir. 2006) (deciding choice of law issue on appeal regardless of whether the plaintiffs waived the issue before the district court because "exceptions to the waiver doctrine would apply" where the parties fully briefed the issue and "Defendants have not suffered any unfair surprise or disadvantage from [the appellate court's] concern that [it] decide the case under the correct law").

Accordingly, the Court rejects Defendants' assertion that Pennsylvania law governs Lender's breach of contract claim despite the clear choice of law provision in the Guaranty. The Court gives effect to that provision and applies New Jersey law.[8]

### 2. Substantive Arguments

Defendants argue that "[e]ven if New Jersey law applies," they are entitled to summary judgment in their favor because the judgment was marked satisfied in the underlying *in rem* action, so "there is no debt remaining for [Lender] to recover from the [G]uarantors." (Doc. No. 57-1 at 16–18.) Defendants reason that because the *in rem* judgment was marked satisfied, the

---

[8] Because the Court rejects Defendants' deficient-pleading argument and independently finds that New Jersey, not Pennsylvania, substantive law governs Lender's breach of contract claims, we need not decide whether the Pennsylvania state court rulings finding the same are entitled to preclusive effect under the Full Faith and Credit Act.

outstanding amount owed is $0, and because the "Note, Mortgage, and Guaranty Agreement all undisputably relate to the same indebtedness," Lender cannot "recover from the [G]uarantors any damages in excess of that judgment" as a matter of law.  (Doc. No. 62 at 7–8.).

A "long settled principle" of New Jersey guaranty law is that "the existence of a subsisting debt of the principal is essential to a suit against the surety."  *Hudson County v. Terminal Const. Corp.*, 381 A.2d 355, 358 (N.J. Super. Ct. App. Div. 1977).  Such is the case "even though the surety's promise is direct, not derivative."  *Id.*  Under this principal, "[l]iability of a guarantor is generally measured by that of his principal, and is so construed unless a lesser or greater liability is expressly assumed by the guarantor."  *Gen. Elec. Credit Corp. v. Castiglione*, 360 A.2d 418, 424 (N.J. Super. Ct. Law Div. 1976); *accord Nat'l Westminster Bank N.J. v. Lomker*, 649 A.2d 1328, 1332 (N.J. Super. Ct. App. Div. 1994); *cf. Hudson County v. Terminal Const. Corp.*, 381 A.2d 355, 358 (N.J. Super. Ct. App. Div. 1977) ("[S]ince plaintiffs did not have a cause of action against [the principal], they had no cause of action against [the guarantor].").

Here, Defendants reason that because Judge Trauger marked the underlying *in rem* judgment satisfied, the debt was discharged, such that there is necessarily nothing to recover from Guarantors.  (*See* Doc. No. 62 at 6–10.)  The problem with this argument is that Judge Trauger explicitly declined to rule on Borrower and Guarantors' "remaining contractual obligations" to Lender, "including any deficiency liability due."  (Doc. No. 60-5 at 10.)  In other words, although the state court entered an *in rem* judgment as to the Property, it declined to rule on whether Borrower or Guarantors were liable for the deficiency:

> While the Court recognizes that the Pennsylvania Deficiency Judgment Act applies to actions both *in rem* as well as *in personam*, the instant action is not subject to the Act because while [sic] the only connection to Pennsylvania is the pledged vacant collateral

13

> commercial Property for the loan. The parties expressly agreed that the applicable law to be applied to the transaction is New Jersey law. Those remaining questions as to the[ ] contractual liability of the parties [i.e., Lender and Borrower] and Guarantors shall be determined by the Federal Court under New Jersey law in the parties' pending litigation in that venue.

(*Id.* at 9 (emphasis added).) Because Borrower's liability for the deficiency has yet to be decided, the Court sees no reason why Lender may not pursue the deficiency directly from Guarantors. *See Bradley v. Atl. Guaranty & Title Ins. Co.*, 121 A. 626, 626 (N.J. 1923) ("The guaranteed holder of a mortgage is certainly entitled to recover from his guarantor the deficiency on his mortgage debt as ascertained upon a foreclosure sale; for, by statute, the first proceeding is to foreclose the mortgage, and, if the mortgaged premises do not sell for a sum sufficient to satisfy the mortgage debt, etc., then it is lawful to proceed on the bond for the deficiency.").[9]

Defendants argue that to the extent they are required to pay any deficiency, they are entitled to offset the $4.9 million judgment with the fair market value of the Property on the day Lender purchased it at the foreclosure sale. (*See, e.g.*, Doc. No. 62 at 6.) Lender argues that they are not entitled to an offset because New Jersey's Deficiency Judgment Act (the "NJDJA") does not apply when the property used as collateral was purchased for a commercial or business purpose. (Doc. No. 60 at 15–23.)

The NJDJA allows a judgment creditor to recover the remainder of a debt from a liable party after foreclosure proceedings if "at the sale in the foreclosure proceeding, the mortgaged

---

[9] There is no dispute here that the Guaranty is a valid contract and thus, that Defendants are liable for the deficiency to the extent it remains following the satisfaction of the *in rem* judgment. *See Jams Profits, LLC v. Turnberry Mews, LLC*, No. 08-5224 (JAP), No. 08–5224 (JAP), 2009 WL 1162861, at *2 (D.N.J. Apr. 28, 2009) (explaining that New Jersey courts will enforce the terms of a guaranty so long as the parties "voluntarily entered into the agreement understanding its terms, the transaction occurred in a commercial setting, viable alternatives existed, and the parties were not subject to oppression or unlawful surprise").

14

premises do not bring an amount sufficient to satisfy the debt, interest and costs." N.J. Stat. Ann. § 2A:50-2. In such an action, however, the judgment creditor is only entitled to recover the "balance due on the debt," which is calculated by subtracting the "the fair market value of the mortgaged premises at the time of the [foreclosure] sale" from the amount of the debt secured. *Id.* §§ 2A:50-2, 2A:50-3. Said differently, the NJDJA calls for an offset equaling the fair market value of the mortgaged property when it was sold. *See Valley Nat'l Bank v. Patyrak Realty, LLC*, No. A–3892–14T4, 2016 WL 6122865, at *2 (N.J. Super. Ct. App. Div. Oct. 20, 2016) ("[Section] 2A:50-3 provides that in an action for a deficiency resulting from the foreclosure sale of mortgaged property, the court may deduct from the debt secured 'the amount determined as the [fair market value] of the premises.'"). As Lender notes, however, the NJDJA does not apply when the "debt secured is for a business or commercial purpose other than a two-family, three-family, or four-family residence in which the owner or his immediate family resides." N.J. Stat. Ann. § 2A:50-2.3a; *see also Lenape State Bank v. Winslow Corp.*, 523 A.2d 223, 233 (N.J. Super. Ct. App. Div. 1987) (applying § 2A:50-2.3 to find that because the "claims flow from a commercial transaction, the protections afforded note holders [under the NJDJA] are not applicable").

      Defendants do not meaningfully argue that they are entitled to a fair market value credit *under the NJDJA*. Instead, they argue that New Jersey courts have allowed fair market value credits in transactions involving commercial properties as a matter of equity. (Doc. No. 62 at 6–7.) This is correct. *See, e.g.*, *W. Pleasant-CPGT, Inc. v. U.S. Home Corp.*, 233 A.3d 463, 472 (N.J. 2020) ("New Jersey courts that have equitably applied a fair market value credit, where statutorily it otherwise would have not applied, have done so when the creditor is seeking a deficiency judgment."); *Citibank, N.A. v. Errico*, 597 A.2d 1091, 1097 (N.J. Super. Ct. App. Div.

1991) ("Although [the NJDJA] was amended to exempt mortgages secured by notes for business and commercial properties from the fair market credit provision, we find nothing which precludes a court from applying equitable principles to impose a fair market value credit to prevent a windfall or where circumstances require equitable relief in the interest of justice. . . . An equity court has the inherent power to prevent a double recovery or windfall to a judgment creditor."); *Valley Nat'l Bank*, 2016 WL 6122865, at *2 (acknowledging that "commercial mortgages are excluded from" the NJDJA's "statutory scheme," but "[e]ven so, our Supreme Court has held that a trial court may grant the [fair market value] credit in the foreclosure of a commercial mortgage on 'appropriate equitable bases'" (quoting *79–83 Thirteenth Ave., Ltd. v. DeMarco*, 210 A.2d 401, 406 (N.J. 1965))).

Lender's argument to the contrary is unavailing. Lender relies on *Summit Trust Co. v. Willow Business Park, L.P.*, but that case "merely stands for the proposition" that when a loan is secured by a mortgage and a personal guaranty, the lender is not required to pursue "foreclosure first on the mortgage before looking to the guarantors for payment." *Nat'l Westminster Bank N.J. v. Hott Props.*, No. A-4082-94T3, 1996 WL 35082048, at *1 (N.J. Super. Ct. App. Div. July 11, 1996); *see also Summit Trust Co. v. Willow Business Park, L.P.*, 635 A.2d 992, 993 (N.J. Super. Ct. App. Div. 1994) (rejecting the guarantors' argument that "they are entitled to the 'equitable right *to foreclose first* and a fair value credit'" (emphasis added)); *see also id.* at 996 ("Thus, where mortgage loans involve the financing of business or commercial properties, the lenders are not required to foreclose on the mortgage before seeking entry of judgment on the notes or on a guaranty."). Here, Lender chose to pursue mortgage foreclosure *before* seeking recompense from the Guarantors. Nothing in *Summit Trust Co.* says that Guarantors are not entitled as a matter of equity to a fair market value credit in such instances. To the contrary, the

court in that case acknowledged previous New Jersey cases had "appl[ied] the concept of fair market value credit as an equitable remedy, even as to commercial debtors, in the context of a foreclosure proceeding and/or resulting deficiency proceeding in which the creditor looks to the mortgage as the source of the security." *Id.* at 996–97 (collecting cases).

Accordingly, the Court finds Defendants are entitled to an offset equal to the fair market value of the Property when it was sold at the sheriff's sale. *See MMU of N.Y., Inc. v. Grieser*, 999 A.2d 1204, 1211 (N.J. Super. Ct. App. Div. 2010) ("MMU does not dispute that the $1,200,500 for which it sold the Monmouth Beach property shortly after the execution sale represented its fair market value at the time. Thus, MMU would obtain an unconscionable windfall if it were allowed to retain the $1,200,500 while only giving defendant credit for the $100 it paid to purchase the property at the sheriff's sale. We are satisfied . . . that the trial court correctly concluded that it had the inherent equitable authority to prevent this windfall by allowing defendant a credit for the amount received by MMU in its sale of the property to a third party."); *Nat'l Westminster Bank N.J.*, 1996 WL 35082048, at *2 ("The guaranty terms did not require NatWest to first look to the property to satisfy the debt. But once it chose to do so, the transaction became subject to the equitable concept of fair market value credits."); *cf. Resolution Tr. Corp. v. Berman Indus., Inc.*, 637 A.2d 1297, 1302 (N.J. Super. Ct. Law Div. 1993) ("The [creditor] is only permitted to obtain a recovery up to the full amount of its loss, and no more, regardless of the sequence in which it pursued the various obligors."). Because the parties dispute the amount of any offset, that issue is left to be determined at trial.[10]

---

[10] In its opposition brief, Lender notes that the Guaranty included a waiver of Guarantors' ability to rely on "[a]ny rights or defenses based upon an offset by the undersigned against any obligation now or hereafter owed to the undersigned by Borrower." (Doc. No. 60 at 19.) But Lender provides no discussion on whether this waiver can permissibly override the equitable doctrine discussed above or otherwise

\*   \*   \*

For the reasons discussed above, Defendants' motion for summary judgment is denied as to Lender's breach of contract claim.

### B.   Unjust Enrichment

That leaves Defendants' argument that it is entitled to summary judgment on Lender's claim for unjust enrichment because the parties' relationship is governed by a written agreement. (Doc. No. 57-1 at 19–20.)  Lender responds that it is allowed to plead its breach of contract and unjust enrichment claims "in the alternative." (Doc. No. 60 at 23.)  But the issue here is not whether Lender may *plead* these claims in the alternative; instead, the Court must determine whether Lender can survive summary judgment where its unjust enrichment claim is based on the same allegations as its breach of contract claim.  New Jersey[11] courts are clear that it cannot. *See 18W Holdings, Inc. v. Sing for Service, LLC*, 763 F. Supp. 3d 651, 663 (D.N.J. 2025) ("The Defendant says: an unjust enrichment claim cannot work when it simply duplicates the contentions that are pressed under a claim for breach of a written contract.  As a matter of New Jersey law, this is a winning argument." (internal citations omitted) (collecting cases)); *Beach Glo Tanning Studio Inc. v. Scottsdale Ins. Co.*, No. 3:20-cv-13901 (BRM) (ZNQ), 2021 WL 2206077, at \*9 (D.N.J. May 28, 2021) ("To state a claim for unjust enrichment under New Jersey law, the plaintiff must plead that the defendant was enriched in a manner not governed by an

---

explain why it should be entitled to obtain a potentially "unconscionable windfall." *MMU of N.Y., Inc.*, 999 A.2d at 1211.

[11] As noted above in Part III.A.1, New Jersey law governs all claims arising out of the parties' contractual relationship.  But even if the Court applied Pennsylvania law, the unjust enrichment claim would still fail.  *See Hollenshead v. New Penn Financial, LLC*, 447 F. Supp. 3d 283, 293 (E.D. Pa. 2020) ("In Pennsylvania, the unjust enrichment doctrine is 'inapplicable when the relationship between the parties is founded on a written agreement or express contract.'" (quoting *Benefit Tr. Life Ins. Co. v. Union Nat'l Bank*, 776 F.2d 1174, 1177 (3d Cir. 1985)).

enforceable contract." (cleaned up)); *cf. Simonson v. Hertz Corp.*, No. 1:10–cv–1585 (NLH)(KMW), 2011 WL 1205584, at *7 (D.N.J. Mar. 28, 2011) ("Plaintiff may plead alternative legal theories at the motion to dismiss stage. . . . [I]f a valid written contract covered the Plate Pass per diem administrative fees, then the existence of this contract would prevent Plaintiff from asserting a claim of quasi-contractual liability.").[12]

Accordingly, Defendants' motion for summary judgment is granted as to Lender's unjust enrichment claim.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment is denied as Lender's breach of contract claim and granted as to Lender's unjust enrichment claim. An appropriate order follows.

---

[12] Lender does not, for example, argue that there is a dispute about the validity of the Guaranty, such that it may be unable to pursue a claim founded on the written contract. *See Caputo v. Nice-Pak Prods., Inc.*, 693 A.2d 494, 497 (N.J. Super. Ct., App. Div. 1997) ("We conclude that a plaintiff who has attempted to prove both breach of contract and unjust enrichment need not choose which one will go to the jury, as long as there is sufficient evidence as to both. . . . Plaintiff correctly contended before the trial court that, if the jury found that there was no valid contract, the jury could then consider whether plaintiff nonetheless might recover for unjust enrichment, a cause of action that does not depend on there being an express contract."). To the contrary, under Lender's unjust enrichment count in the Complaint, it reiterates that "Defendant Guarantors have failed to perform their obligations under the Guaranty Agreement," thus confirming that the unjust enrichment claim is based only on the parties' written agreement. (Doc. No. 1 at 6.)